WILLIE C. SIMPSON,

                Plaintiff,

v.                                      Case No. 19-cv-1221-pp

SGT. WEYCKER, C.O. FRUIBRODTTE,
C.O. GUMM, CAPT. VANLANAN,
CAPT. ELSINGER, SGT. HERT,
SGT. FRIEDEL, SGT. RETLAFF,
C.O. DEIDRICK, SGT. PEOTTER,
SGT. SCHERLIN, C.O. ERNIE,
C.O. KORPITTA, C.O. LUETERMAN,
SGT. YANG, CAPT. CUSHING, and
JOHN DOES,[1]

                Defendants.

**ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A, DENYING AS MOOT DEFENDANTS' MOTION TO SCREEN COMPLAINT AND EXTEND TIME TO RESPOND TO AMENDED COMPLAINT (DKT. NO. 19)**

## I.    Procedural History

Willie C. Simpson, who is confined at Green Bay Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983 in Dane County Circuit Court. Dkt. No. 1 at 1. He sued state officials for: 1)

---

[1] In the caption of his amended complaint, page 1, the plaintiff named the Green Bay Correctional Institution, the governor of Wisconsin, the Secretary of the Department of Corrections and several individual defendants. Dkt. No. 2 at 1. On the second page of the amended complaint, in paragraph 4, he listed more individual defendants than he listed in the caption but did not list all the individual defendants against whom he makes allegations in the amended complaint. Dkt. No. 2 at 2. Because the original complaint now has been broken into three separate suits, the court has modified the caption of this case to contain only the names of the defendants against whom the court is allowing the plaintiff to proceed.

1

denying him a parole hearing; 2) failing to properly treat him for human immunodeficiency virus; and 3) interfering with his mail. Id. The defendants removed the case to the United States District Court for the Western District of Wisconsin and paid the $400 filing fee. Id. At the time they removed the case, the defendants also filed a motion to transfer the case to this district—the United States District Court for the Eastern District of Wisconsin. Id. Chief Judge James Peterson, the judge to whom the case was assigned in the Western District, concluded that the plaintiff should have filed three separate lawsuits—one related to parole, one related to medical treatment and one related to mail. Id. at 1–2.

Judge Peterson directed the defendants to choose which of the cases they wanted to apply the $400 filing fee to and whether they wished to remove the other two lawsuits (and pay additional filing fees). Id. at 2. The defendants responded that they wanted to remove all three cases and that they would pay the additional fees. Id. Judge Peterson told the plaintiff that if the defendants chose the medical treatment or mail lawsuits, he would have to amend his complaint. Id. The plaintiff filed an amended complaint naming the officials at Green Bay Correctional who he alleged were involved in his medical care and mail claims. Id. Judge Peterson directed the clerk's office to file the amended complaint in two new cases, including this one. Id. Shortly thereafter, the defendants moved to transfer this case to this district. Dkt. No. 5. Judge Peterson granted that motion and transferred this case, along with the other case relating to the amended complaint (Case No. 19-cv-1222). Dkt. No. 14.

2

The amended complaint contains allegations related to all three lawsuits. See Dkt. No. 2. The plaintiff divided his claims into three distinct sections, however, so rather than requiring him to file an amended complaint containing only one claim, the court will screen "Sec. 2" of the plaintiff's statement of claim, which appears on pages nine through twelve of the amended complaint. (Dkt. No. 2 at 9–12.) The court will not consider the remaining claims (or defendants) in the amended complaint because they are being pursued in other lawsuits.

**II.      Screening Section 2 of the Amended Complaint (Dkt. No. 2)**

   A.      Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

3

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

At the time he filed the complaint, the plaintiff was confined to a segregation cell twenty-four hours a day. Dkt. No. 2 at 9. All of his outgoing mail was picked up from his cell and opened by segregation staff, including Captain Vanlanen, Captain Elsinger, Sergeant Weycker, Sergeant Hert, Sergeant Friedel, Sergeant Retlaff, Sergeant Peotter, Sergeant Selterlin, C.O. Gumm, C.O. FruiBrodtte, C.O. Deidrick, C.O. Korpitta, Sergeant Lueterman and John Doe guards. Id.

4

On November 15, 2017, the plaintiff received an "indigent envelope" from prison administration (a free envelope he could use to send letters to attorneys, court or family). Id. at 10. The plaintiff wrote a letter to his son's mother, in which he talked about misconduct by prison guards, his intent to file a lawsuit against the Department of Corrections and DOC officials and his concerns that an inmate was harassing his family and how to address those concerns. Id. On November 16, 2018, a guard picked up the envelope from the plaintiff's cell door on the 200 Wing for screening and mailing. Id. Defendant Sergeant Weycker returned to the 200 Wing with the envelope in his hand, opened, and went to the inmate whom the plaintiff believed was harassing his family. Id. Weycker told that inmate about the letter and allowed the inmate to read it. Id. He then directed that inmate to write threatening letters to the plaintiff's family "to kill them because [the plaintiff was] trying to get a lawsuit to intimidate [him]." Id. The plaintiff told Weycker the plaintiff would file an inmate complaint. Id.

Sometime between November 17 and 18, 2017, C.O. FruiBrodtte returned the envelope and the letter. Id. FruiBrodtte told the plaintiff the letter would not be mailed because of its contents and warned him to not file any complaints against Weycker because staff would screen the mail and the complaint would go into the garbage. Id. The plaintiff filed a complaint against Weycker on November 19, 2017 based on Weycker screening, reading and censoring the plaintiff's mail and then threatening and intimidating the plaintiff because of the letter's contents. Id.

On November 22, 2017, Jodi Perttu, an inmate complaint examiner, mailed the plaintiff a response to his complaint. Id. at 11. Perttu instructed the plaintiff to fill out a more detailed statement and return it within a week so the allegations could be investigated. Id. On November 26, 2017, the plaintiff completed the detailed statement and gave it to C.O. Gumm around 8:30 p.m. during medication pass. Id. Gumm told the plaintiff that he would read the contents of the statement and throw it in the garbage if it contained anything about Weycker or any other segregation officer. Id. The plaintiff alleges that Gumm read the statement and threw it in the garbage to cover up what Weycker had done. Id. On November 29, 2017, the plaintiff received a rejection of his complaint; the inmate complaint examiner said he or she did not receive the detailed statement. Id.

On July 26, 2018, the plaintiff filed a complaint against Vanlanan, Elsinger, Hert, Weycker, Friedel, Gumm and FruiBrodtte for "staging an assault upon me to cover-up C.O. Gumm + C.O. FruiBrodtte sexual harassment of me." Id. He also filed a criminal John Doe complaint in Brown County Circuit Court against prison guards. Id. The plaintiff says that between October 1, 2018 and January 17, 2019, Gumm, Vanlanan, Cushing, Friedel, Yang and Scherlin wrote disciplinary reports and put him on security restrictions in retaliation for the complaints he filed and the John Doe complaint. Id.

The plaintiff says that "pursuant to DOC mail screening policy and GBCI policy" numerous officials—Vanlanen, Elsinger, Weycker, Hert, Friedel, Retlaff,

6

Gumm, FruiBrodtte, Deidrick, Peotter, Scherlin, Ernie, Korpitta, Lueterman and John Does—"screened, read and censored [his] inmate complaint alleging" that segregation staff "stage[d] an assault" on him and blocked the delivery of his complaint to the inmate complaint examiner. Id. at 12. He alleges that between July 26, 2018 (when he filed the inmate complaint alleging the sexual assault) and January 28, 2019, Hert, Friedel, Retlaff, Peotter, Scherlin, Gumm, FruiBrodtte, Deidrick, Lueterman and Korpitta came to his cell, turned off their body cameras, intimidated him with threats, woke him out of his sleep and taunted him in retaliation for the content of his inmate complaints against segregation guards and the John Doe complaint. Id.

For relief, the plaintiff asks for an order barring the defendants from "screening, reading, censoring and obstructing" his and other inmates' outgoing mail to courts, attorneys and family. Id. at 16. He also asks the court to bar physical or indirect contact between him and the defendants and to order him transferred to another institution so there will be no future retaliation. Id. Finally, he seeks money damages. Id. at 17.

  C. <u>Analysis</u>

Section 2 of the amended complaint describes two incidents of interference with the plaintiff's mail and retaliation.

The first set of allegations involves the November 2017 incident in which Weycker allegedly opened the plaintiff's letter to his son's mother, read it, shared it with another inmate and told that inmate to write threatening letters to the plaintiff's family. The allegations include the plaintiff's claims that

7

FruiBrodtte returned the letter to him and warned him not to make any complaints against Weycker, the plaintiff filing a grievance against Weycker, ICE Perttu asking the plaintiff for a more specific statement of facts about the incident, the plaintiff writing the more specific statement about the incident and giving it to Gumm, Gumm reading and throwing away the statement and the rejection of the plaintiff's complaint by the ICE because the ICE never got the more detailed statement.

The second set of allegations involves the reaction of various members of the prison staff to the plaintiff's July 26, 2018 grievance (and filing of a John Doe complaint) alleging that seven corrections staff members staged an assault on him to cover up the sexual misconduct committed by two of them. The plaintiff says that Gumm, Vanlanan, Cushing, Friedel, Yang and Scherlin retaliated against him for filing the grievance and complaint by writing disciplinary reports and putting him on security restrictions. He alleges that Vanlanen, Elsinger, Weycker, Hert, Friedel, Retlaff, Gumm, FruiBrodtte, Deidrick, Peotter, Scherlin, Ernie, Korpitta, Lueterman and John Does read the complaint and blocked its delivery to the complaint examiner. And he alleges that Hert, Friedel, Retlaff, Peotter, Scherlin, Gumm, FruiBrodtte, Deidrick, Lueterman and Korpitta threatened him, harassed him by waking him during the night and taunted him in retaliation for filing the grievance and complaint.

The plaintiff's allegation that Weycker and FruiBrodtte interfered with his ability to send mail implicates the First Amendment. "Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778,

8

Case 2:19-cv-01221-PP    Filed 09/30/20    Page 8 of 14    Document 20

782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576 . . . (1974); *Rowe*, 196 F.3d at 782." Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir. 2005)). To state a cause of action for interference with his mail under the First Amendment, a prisoner must "allege[] a continuing pattern or repeated occurrences of such conduct." Harmon v. Walton, No. 15-cv-1351-MJR, 2016 WL 5243005, at *2 (S.D. Ill. Sept. 22, 2016) (citing Zimmerman v. Tribble, 226 F.3d 568, 572 (2000); Sizemore v. Williford, 829 F.2d 608, 609 (7th Cir. 1987)). There are special concerns related to content-based restrictions on a prisoner's exercise of his First Amendment rights. Id. at *3 (citing Rowe, 196 F.3d 782).

While it appears that the plaintiff has identified only one incidence of interference with his mail (and not a continuing pattern), he alleges that the interference was content-based—Weycker and FruiBrodtte violated his privacy and refused to let him send mail based on its content. At this early stage, the court will allow the plaintiff to proceed on a First Amendment interference-with-mail claim against Weycker and FruiBrodtte.

The plaintiff alleges that FruiBrodtte and Gumm interefered with (or blocked) his ability to file an inmate grievance about Weycker's actions with the plaintiff's letter. He also alleges that Vanlanen, Elsinger, Weycker, Hert, Friedel, Retlaff, Gumm, FruiBrodtte, Deidrick, Peotter, Scherlin, Ernie, Korpitta, Lueterman and John Does prevented him from presenting his grievance about the assault to the complaint examiner. "Prison grievance procedures are not

9

mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citing George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); Grieveson v. Anderson, 538 F.3d 763, 772 & n.3 (7th Cir. 2008); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)). A prisoner's claim that someone interfered with his ability to file grievances, however, can state a claim for denial of access to courts, if the prisoner can show that by preventing him from filing grievances, the prison official prevented from exhausting his administrative remedies, a prerequisite to a federal §1983 claim. See, *e.g.*, Jacobs v. Gerber, 403 F. App'x 67, 69 (7th Cir. 2010) (citing Lewis v. Casey, 518 U.S. 343, 352-53 (1996); Pratt v. Tarr, 464 F.3d 730, 732 (7th Cir. 2006); Lehn v. Holmes, 364 F.3d 862, 868 (7th Cir. 2004).

At this early stage, it is not clear whether the staff members' alleged blocking of the plaintiff's grievances will interfere with his access to the courts. The court will allow the plaintiff to proceed on an access-to-courts claim against FruiBrodtte, Gumm, Vanlanen, Elsinger, Weycker, Hert, Friedel, Retlaff, Gumm, FruiBrodtte, Deidrick, Peotter, Scherlin, Ernie, Korpitta, Lueterman and John Does.[2]

---

[2] After the named defendants have answered or otherwise responded to the complaint and the court has issued a scheduling order, the plaintiff may use discovery to ask the named defendants for information to help him identify the Doe defendants. Once he finds out the real names of the Doe defendants, he may file a motion to amend the complaint, asking to substitute the real names of the Doe defendants for the "Doe" placeholder.

10

Finally, the plaintiff's allegations that various officers retaliated against him for filing grievances and complaints (or trying to) implicates the First Amendment.

> To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020).

"Grieving about prison conditions is protected First Amendment activity[.]" Antoine v. Ramos, 497 F. App'x 631, 634 (7th Cir. 2012) (citing Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012)). When the plaintiff tried to file a complaint about Weycker opening, reading and sharing his letter to his son's mother, or about the alleged staged assault, he was engaging in protected First Amendment activity. He has alleged that the defendants took adverse actions against him—he says that they filed disciplinary reports against him, had restrictions placed on him, threatened him, woke him at night and taunted him. Finally, he has alleged that the officers did these things because he tried to file a grievance and did file a John Doe complaint about the alleged assault. The court will allow the plaintiff to proceed on a First Amendment retaliation claim against Gumm, Vanlanan, Cushing, Yang, Scherlin, Hert, Friedel, Retlaff, Peotter, FruiBrodtte, Deidrick, Lueterman and Korpitta.

### III. Motion for Screening Order and Extension of Time to Respond (Dkt. No. 19)

Two weeks after Judge Peterson granted the defendants' motion to transfer this case to the Eastern District, the defendants filed a motion asking the court to screen the complaint and to give the defendants thirty days from the date of the screening order to respond. Dkt. No. 19. The court was not able to screen the complaint as quickly as it would have liked, but it has done so. The defendants had no need to ask for time to respond—under the Memorandum of Understanding between this court and the Wisconsin Department of Justice, the defendants will have sixty days to answer or otherwise respond. If the defendants find they need additional time to respond once they've been served with the amended complaint, they need only ask. The court will deny the motion as moot.

### IV. Conclusion

The court **DENIES AS MOOT** the defendant's motion for a screening order and an extension of time to respond to the complaint. Dkt. No. 19.

The court **ORDERS** that in this case, the plaintiff may proceed against defendants Weycker, FruiBrodtte, Gumm, Vanlanan, Elsinger, Hert, Friedel, Retlaff, Deidrick, Peotter, Scherlin, Ernie, Korpitta, Lueterman, Yang, Cushing and John Does on the claims raised in Sec. 2 of the amended complaint. Because Sec. 2 makes no allegations against Green Bay Correctional Institution, Tony Evers, Kevin A. Carr, Jean Lutsey, Sue Peters or Capt. Bauman, the court **ORDERS** that those defendants are **DISMISSED** from this lawsuit.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Weycker, FruiBrodtte, Gumm, Vanlanan, Elsinger, Hert, Friedel, Retlaff, Deidrick, Peotter, Scherlin, Ernie, Korpitta, Lueterman, Yang and Cushing. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. The plaintiff is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his whereabouts may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 30th day of September, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**